**Gervin ROBERTSON, Plaintiff,**

v.

**GEORGIA DEPARTMENT OF CORRECTIONS, WAYCROSS PROBATION OFFICE, Defendant.**

No. CV588–130.

United States District Court,
S.D. Georgia,
Waycross Division.

July 6, 1989.

Gervin L. Robertson, Blackshear, Ga., pro se.

Wayne P. Yancey, Asst. Atty. Gen., Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Plaintiff, proceeding *pro se*, filed this action alleging that he was harassed at work, denied a promotion, and ultimately discharged because of his race, all in violation of his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Plaintiff has obtained a right to sue letter from the EEOC and has filed within the prescribed time limits. This action is presently before the Court on defendant's motion for summary judgment. For the reasons stated herein, the Court hereby GRANTS defendant's motion.

## BACKGROUND

Plaintiff, who is black, began working for the Georgia Department of Corrections in 1975, and remained there until he was fired in September, 1986. Plaintiff had been promoted three times, most recently in March, 1979. His second promotion called for a move to the Waycross Probation Office, where he was the first black employee hired by that office.

In May, 1984, plaintiff was involved in a serious car accident. Then, in November, 1985, plaintiff's father died. As a result of these unfortunate events, plaintiff's job performance suffered. Plaintiff believes that he should have taken six or seven months off from work at that time, but he claims that he did not do so because he felt he was needed at work. In October of either 1984 or 1985, plaintiff was denied a promotion to the position of Probation Officer III.

In December, 1985, plaintiff received a verbal reprimand from his supervisor, Herman Hill. The reprimand was the result of a review of plaintiff's fieldbook that revealed numerous failures to keep his caseload up to date. According to Hill's affidavit, plaintiff was told that his fieldbooks would be reviewed again in March, and plaintiff was warned that if he did not improve his performance, he would be subject to severe action.

On May 29, 1986, based upon another review of plaintiff's fieldbooks, Hill issued an appraisal of plaintiff's work and an official reprimand. In the appraisal, Hill gave plaintiff a rating of 2.3 on a scale of 1 to 5. In the reprimand, Hill accused plaintiff of "negligence and inefficiency in performing assigned duties" and listed both specific infractions and general criticisms of plaintiff's work. Most of the criticisms involved failure to maintain proper records of plaintiff's contacts with probationers, and Hill labelled all these failures "inexcusable".[1]

In August, 1986, Hill again reviewed plaintiff's fieldbooks and found no improvement. On September 3, 1986, Hill charged plaintiff with twenty three counts of misconduct or negligence similar to those contained in plaintiff's earlier performance appraisal and recommended him for dismissal. Plaintiff appealed the discharge to the State Personnel Board. After an evidentiary hearing before an independent hearing officer, the hearing officer found that twenty one of the twenty three charges of misconduct were supported by the evidence presented.

While plaintiff has not contested the substantial validity of the charges against him,[2] he claims that other employees, who were white, committed the same offenses but were not fired. Plaintiff claims that his employer took advantage of his personal problems to build a case against him, to deny him the promotion to Probation Officer III, and ultimately, to fire him. He also claims that he was harassed by having his office searched while he was out of the office, by being relocated to a less desirable office, and by being subjected to racial jokes.

Defendant has now moved for summary judgment contending that race was not a factor in its actions toward plaintiff.

*Summary Judgment*

It is only with caution that a court should dispose of an employment discrimination case by summary judgment, given the heavily factual nature of the charge. *Beard v. Annis,* 730 F.2d 741, 743 (11th Cir.1984). The movant in an action for summary judgment "bears the exacting burden of demonstrating that there is no dispute as to any material fact." *Warrior Tombigbee Transp. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). On the other hand, when a properly supported motion for summary judgment has been made, Rule 56(e) of the Federal Rules of Civil Procedure provides that the adverse party "must set forth specific facts showing that there is a genuine issue for trial." In this regard, "conclusory allegations without specific supporting facts have no probative value." *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985); *Gordon v. Terry,* 684 F.2d 736, 744 (11th Cir.1982). Furthermore, while "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant ... an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir.1985). Summary judgment against a party is appropriate if the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477

---

1. The reprimand listed sixteen specific examples of misconduct, and also contained the following four general criticisms:
   1) Failure to follow instructions of supervisor in completing Presentence Investigations by the time they are due and submitting incomplete reports.
   2) Failure to organize office in order to stay on top of assignments, record entries and meet standards of supervision.
   3) Failure to leave fieldbooks in the office when you are not in.
   4) Excessive tardiness for work. (Plaintiff's Depo., Exhibit 2).

2. In his affidavit and opposition brief, plaintiff does state that the "charges" against him were "exaggerated". At plaintiff's deposition, however, defendant's attorney asked plaintiff to review the specific criticisms contained in the July, 1986 performance appraisal. Plaintiff was unable to offer any specific rebuttal to any charge in the report, except to state that "I felt as if he [the supervisor] should have had more consideration, because ... he and I have been in the Department and worked together for over ten years." (Plaintiff's Depo., p. 17–19, 43–47).

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## ANALYSIS

Plaintiff accuses his employer of violating Title VII by treating him "less favorably than others because of [his] race." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). In order to prevail on this claim, plaintiff must prove that his employer acted with discriminatory intent. *Id.; Clark v. Huntsville City Board of Education*, 717 F.2d 525, 529 (11th Cir.1983). Plaintiff need not produce direct evidence of discrimination, however, to establish the existence of discriminatory intent. The Supreme Court has set forth a method of dealing with circumstantial evidence of discrimination; the first step in this method is the presentation of a prima facie case of discrimination. *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973).

The prima facie showing gives rise to a rebuttable presumption that an employer has engaged in racially discriminatory practices, and the defendant is then required to "articulate some legitimate, non-discriminatory reason" for the challenged action. *Id.* at 802, 93 S.Ct. at 1824; *see also Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.1984). Once the employer has offered its rebuttal, the plaintiff bears the burden of showing by a preponderance of the evidence, that the reasons given by the employer are pretextual, and that the employer's actions were in fact motivated by discriminatory intent. *Id.* 411 U.S. at 804, 93 S.Ct. at 1825. *See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

### A. *Discriminatory Discipline*

Plaintiff's central allegation is that defendant was discriminatory in disciplining him. Plaintiff has not contested the validity of the charges of negligence offered by defendant to justify the discharge. Plaintiff contends, rather, that his work infractions resulted in discharge while other employees, who committed similar offenses, were not discharged.

■ To demonstrate a prima facie case of discriminatory discipline, a plaintiff must show that he is a member of a protected class, and that either he did not commit the misconduct in question, or that he did commit the misconduct, but that persons outside the protected class committed similar misconduct and were subjected to less severe disciplinary measures. *Jones v. Gerwens*, 874 F.2d 1534, 1539 (11th Cir.1989); *Brown v. A.J. Gerrard Mfg. Co.*, 643 F.2d 273, 276 (5th Cir.1981).

■ Plaintiff states in his affidavit that he will present as witnesses "co-worker[s] with similar work related problems that will testify that they were give[n] options other than being dismissed." (Plaintiff's Affidavit, April 26, 1989, ¶ 4). He also states that "similarly situated white employees were treated in a more humane fashion." (*Id.* at ¶ 3). The affidavit contains nothing more specific in relation to these allegations. Plaintiff's opposition brief states only that his witnesses and personnel files will attest to the differential treatment. The brief does not provide the names of these witnesses nor predict the content of their testimony. Nor does it explain whose personnel files he will use or how materials in those files support his claim.

In his deposition, plaintiff claimed that Danny Miller and Jimmy Griffin were two employees whose caseload backlogs were "almost probably" as bad as plaintiff's. Plaintiff also stated that he had seen "some of [Miller and Griffin's] records" and that the records "could possibly have been worse than mine." (Plaintiff's Depo., p. 60). Such speculation about the general state of other employees' records does not constitute a factual showing that these co-workers had committed any of the misconduct with which plaintiff was charged. Such a showing is an essential element of a prima facie case of discriminatory discipline. *Jones*, 874 F.2d at 1539.

Plaintiff went on to state in his deposition that he didn't know whether Miller and Griffin had been reprimanded. (Plaintiff's Depo., p. 61). To make out his prima facie case, plaintiff must show that other employees were disciplined less severely than plaintiff. *Id.*

Plaintiff also alleges that he was discriminatorily disciplined by being required to bring his caseload up to date more quickly than white probation officers. Plaintiff has failed to provide facts or comparisons to justify this allegation.[3]

Q: You also indicate in your complaint that you felt that Mr. Hill had given you more work than you could complete.

A: Correct....

Q: But what he requested was that you make up your backlog, basically, right?

A: ... I don't believe [other probation officers] were required to do that ... during that two month period of time.

Q: But you don't know that for a fact, one way or the other?

A: I hadn't had the opportunity to check the files ...

The Court cannot allow such conjectural testimony to constitute a prima facie case of employment discrimination. *See Evers,* 770 F.2d at 986.

Even if the Court could find that plaintiff had established a prima facie case, however, "the establishment of a prima facie case does not in itself entitle an employment discrimination plaintiff to survive a motion for summary judgment in all cases." *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987); *see also Pace v. Southern Ry. System,* 701 F.2d 1383, 1389 (11th Cir.1983). "A plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant," but must "create an issue of fact and avoid summary judgment by introducing additional evidence of pretext." *Grigsby,* 821 F.2d at 596.

Here, defendant has come forward with "powerful justification evidence" of unsatisfactory work performance. This evidence provides a legitimate, non-discriminatory justification for requiring plaintiff to catch up on his caseload and, when he failed to do so, for firing plaintiff. Plaintiff has failed to respond with a showing that the justification is in fact a pretext for discrimination. *Id.; see also Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Rather, plaintiff has presented only conclusory statements suggesting that other employees were similarly situated and better treated. Without "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), plaintiff's allegations cannot stand in the way of a properly supported motion for summary judgment on the issue of discriminatory discipline.

## B. *Discriminatory Failure to Promote*

■ Plaintiff asserts in his complaint that he was denied promotion to Probation Officer III because of his race. To establish a prima facie case of discriminatory failure to promote, the plaintiff must show that 1) he belongs to a group protected by the statute; 2) he was qualified for the promotion; 3) he was not promoted; and 4) after his rejection, the position he sought remained open, and his employer continued to seek applicants from people with plaintiff's qualifications. *McDonnell–Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 625 (11th Cir.1983).

■ Plaintiff offers almost no evidence whatsoever in support of his claim of discriminatory failure to promote.[4] He states in his deposition that he was denied the promotion to Probation Officer III because of his race and that he was the most qualified of the applicants for the post. However, he has provided the Court with no indication of what the qualifications for the post of Probation Officer III are. He also

---

**3.** Plaintiff admitted during his deposition that he was never able to catch up with work after the car accident, which occurred a full two years before plaintiff was fired. (Plaintiff's Depo., p. 40).

**4.** Plaintiff does not discuss the failure to promote claim in either his affidavit or his opposition brief.

fails to present any evidence on the qualifications of the other applicants for the position.

By failing to produce this evidence, plaintiff has failed to show two elements of his prima facie case—that plaintiff was qualified for the promotion and that defendant continued to seek applicants with similar qualifications. *McDonnell–Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Defendant is thus entitled to summary judgment on the issue of failure to promote, since plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## C. *Racial Harassment*

■ In his complaint, plaintiff alleges that his employer harassed him because of his race. A plaintiff can establish a violation of Title VII by showing that an employer is "creating or condoning an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity," *Vance v. Southern Bell Tel. and Tel. Co.,* 863 F.2d 1503, 1510 (11th Cir.1989), *quoting Henson v. City of Dundee,* 682 F.2d 897, 901 (11th Cir.1982). Such harassment does not have to occur on any particular occasion, but "is to be determined by the totality of the circumstances." *Vance,* 863 F.2d at 1511. However, the harassment "must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Id.* at 1510.

■ One allegation of harassment presented by plaintiff is that he was removed to an inferior office because of his race. Other than this bare allegation, plaintiff has offered no evidence to support his claim that the office change was racially motivated. Plaintiff's supervisor states in his affidavit that the office change was part of an overall office reorganization. When the supervisor learned that plaintiff was dissatisfied, he offered plaintiff the opportunity to change offices, which plaintiff refused. (Affidavit of Herman Hill, p.

6). Plaintiff has offered nothing to rebut this legitimate, non-discriminatory explanation for the office change. He has therefore failed to create a genuine issue of fact as to whether he was assigned an inferior office based upon his race. *Grigsby,* 821 F.2d at 596.

In further support of his charge of racial harassment plaintiff states that his employer engaged in "tampering with files and records, altering and illegally searching [plaintiff's] office." When questioned about these events during his deposition, however, plaintiff explained that "there were times of cases being removed from my fieldbook by [supervisors] without my knowledge ... without my being present." (Plaintiff's Depo., p. 10). Later in his deposition, plaintiff stated that the supervisors would tell him that they had been in his office, and "if they took a case of mine, then they might say, 'Hey, I've got this case.'" (*Id.* at 13). Absent other evidence, such behavior on the part of supervisors cannot be deemed to contribute to a case of racial harassment. When asked what else, aside from retrieving case files, plaintiff alleged his supervisors did in his office, plaintiff responded, "Just, I think, basic surveillance. Just to see, you know, what I kept in my office." (Plaintiff's Depo., p. 14). Plaintiff provided no further facts to support his allegation of unauthorized searches of his office.

Plaintiff also claims that he was subjected to racially demeaning jokes, and in his affidavit he names specific supervisors who called him "Gervin ole boy" and "Gervin the affirmative action boy." Such statements cannot be condoned. However, in the first case to recognize a cause of action based upon a discriminatory work environment, the court cautioned that the case should not be "interpreted as holding that an employer's mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee falls within the proscription of [Title VII]." *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971).

The Court is mindful of the *Vance* court's warning that a hostile environment case must be viewed in the context of all

relevant incidents, and not as a "sum total of a number of mutually distinct causes of action each to be judged on its own merits." *Vance*, 863 F.2d at 1510–11. However, in a racial harassment case, the plaintiff must show that his employer created or condoned an "environment at the workplace which significantly and adversely affect[ed plaintiff] because of his race or ethnicity." *Vance*, 863 F.2d at 1510. Given the facts presented by plaintiff, the Court holds that only "speculation," *Blackston*, 764 F.2d at 1482, could create a "genuine issue for trial," Fed.R.Civ.P. 56(e), as to whether plaintiff's employer engaged in racial harassment prohibited by Title VII.

### D. *Conclusion*

The defendant in this action for summary judgment has successfully borne "the exacting burden of demonstrating that there is no dispute as to any material fact" regarding plaintiff's claims of discriminatory discipline, discriminatory failure to promote, or racial harassment. *Warrior Tombigbee Transp.*, 695 F.2d at 1296. The Court therefore GRANTS defendant's motion for summary judgment.

SO ORDERED.