**Anthony WELCH, Plaintiff,**

**v.**

**DELTA AIR LINES, INC., Defendant.**

**No. CIV.A.1:95CV2436FMH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 19, 1997.

1134

Charles Rogers Floyd, Jr., The Floyd Law Offices, Peachtree City, GA, for Plaintiff.

Hunter R. Hughes, III & Benjamin Alexander Stone, Rogers & Hardin, Atlanta, GA, Jay Darwin Milone, Delta Air Lines Inc., Law Dept., Atlanta, GA, for Defendant.

## ORDER

HULL, District Judge.

Plaintiff Anthony Welch brings this employment discrimination action under Title VII and § 1981. This matter is before the Court on Magistrate Judge Dougherty's Report and Recommendation [34–1] recommending that Defendant Delta Air Lines, Inc's Motion for Summary Judgment [27–1] be granted on all of Plaintiff's claims. Plaintiff has filed timely Objections [35–1] to Magistrate Judge Dougherty's Report and Recommendation and the Court reviews those portions of Magistrate Judge Dougherty's Report and Recommendation to which Plaintiff specifically has objected *de novo*.

## I. FACTS

In 1990, Plaintiff applied for and received a position as an instructor in Defendant's Program Development area in the Ground Training Department.[1] Plaintiff claims that in his first six months in the Ground Training Department, he did not receive any computer programming (or Tel) assignments. Plaintiff complains that the disparity in assignments he received was based on his race.

Plaintiff also complains that he was subject to racial remarks and innuendo in the Ground Training Department. One day in December 1990, Plaintiff called into work to say that he would be late that day because his automobile had been vandalized during the night. When Plaintiff arrived at work, he was shown a parody (in the form of a poem) written by his co-workers (including his supervisor) of the "Twelve Nights of Christmas," that made reference to the vandalism of Plaintiff's car. Plaintiff perceived the poem's reference to "malt liquor" as a stereotype based on Plaintiff's race.

Plaintiff also highlights two statements by a secretary in the Ground Training Department, Donna Shelley. On one occasion, Shelley referred to Plaintiff as "black boy" and on another occasion remarked that if she wrote on Plaintiff with a black marker, it would not show up. Plaintiff reported these statements to Paul Nordan, Defendant's Manager of Program Development. After Plaintiff reported the incident, Shelly apologized to Plaintiff and never said anything to Plaintiff again. Plaintiff also states that he was told at some point in 1993, another co-worker, Lamar Smith, said that if Plaintiff walked into a darkened room, no one would see him.

Finally, Plaintiff claims that he also was subject to differential treatment regarding the performance of his duties and in his ultimate "discharge."[2] Regarding the treatment relating to his performance, Plaintiff claims that his work received more intense scrutiny than his white co-workers. Regarding his "discharge," Plaintiff claims that he was removed from the Ground Training Department while less qualified white employees were retained. Defendant "discharged" Plaintiff as part of a downsizing effort in 1994 wherein Defendant determined that it had to remove three employees from its Ground Training Department. Defendant created a ranking system whereby the lowest three ranked employees would be removed. Plaintiff was one of the three lower ranked employees designated for removal.

## II. DISCUSSION

### A. Plaintiff's Hostile Work Environment Claim Is Barred By The Applicable Statutes Of Limitations

As a prerequisite to filing a suit under Title VII, an employee must file a charge of discrimination with the EEOC. *Moore v. Alabama State Univ.*, 864 F.2d 103, 104 (11th Cir.1989). The employee has 180 days from the date of the alleged discriminatory act (or the last discriminatory act in the case of a continuing violation) to file a charge of discrimination. 42 U.S.C. § 2000e–5(e); *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992). Plaintiff filed his charge of discrimination on January 30, 1995. Thus, if the last act which comprises Plaintiff's hostile work environment claim occurred more than 180 days before Plaintiff filed his charge of discrimination, or before August 3, 1994, Plaintiff's hostile work environment claim under Title VII is barred by Title VII's statute of limitations.

Unlike Title VII, § 1981 does not contain an express statute of limitations. Thus, in *Goodman v. Lukens Steel*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the United States Supreme Court held that lower courts should apply the statute of limitations for the most analogous state law cause of action from the state in which the act occurred. *Id.* at 661, 107 S.Ct. at 2621; *see also Wilson v. Garcia*, 471 U.S. 261, 266–68, 105 S.Ct. 1938,

---

1. This was Plaintiff's third position with Defendant. In 1988, Plaintiff began work with Defendant as an Associate Programmer, and in 1989, Plaintiff was promoted to Program Analyst.

2. While Plaintiff characterizes his removal from the Ground Training Department as a discharge, Plaintiff actually was transferred to a position with TransQuest, a joint venture between Defendant and AT & T Corporation.

1941–43, 85 L.Ed.2d 254 (1985). The Eleventh Circuit has held that Georgia's two-year statute of limitations for personal injury actions applies to § 1981 causes of action based on conduct occurring in the State of Georgia. *Brown v. East Central Health Dist.,* 752 F.2d 615, 618–19 (11th Cir.1985). The period begins to run when the plaintiff-employee knew or reasonably should have known that the discriminatory act occurred. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *Pearson v. Macon–Bibb County Hosp. Auth.,* 952 F.2d 1274, 1279 (11th Cir.1992); *Stafford v. Muscogee County Bd. of Educ.,* 688 F.2d 1383, 1390 (11th Cir.1982). Plaintiff filed this law suit on September 26, 1995. Thus, if the last act which comprises Plaintiff's hostile work environment claim occurred more than two years before Plaintiff filed this law suit, or before September 26, 1993, Plaintiff's hostile work environment claim under § 1981 is barred by § 1981's statute of limitations.

■ Defendant contends that Plaintiff's hostile work environment claims under Title VII and § 1981 are time-barred because it is clear that most of the events that comprise Plaintiff's hostile work environment claims occurred no later than 1991, approximately four years before Plaintiff filed this action and well over 180 days before Plaintiff filed his charge of discrimination. According to Defendant, the only episode on which Plaintiff relies after 1991 was a comment made at some point in 1993 that if Plaintiff walked into a dark room, no one would see him. This statement still is well outside Title VII's statute of limitations; but if it occurred later than September 26, 1993, it is within § 1981's statute of limitations. Defendant contends that since Plaintiff fails to present any evidence that this statement was within the applicable statute of limitations, Defendant is entitled to summary judgment on this claim.

As an initial matter, the Court notes that in its Brief in Opposition to Defendant's Motion for Summary Judgment, Plaintiff failed even to respond to Defendant's statute of limitations argument. Thus, under Local Rule 7.1 of the Northern District of Georgia, Defendant's Motion of Summary Judgment on this ground is unopposed. *See* LR 7.1 NDGa. In not opposing Defendant's argument on this ground, Plaintiff's necessarily does not oppose Defendant's characterization of the acts which comprise Plaintiff's hostile work environment claims and Defendant's argument that all of these acts occurred outside the applicable statutes of limitations. Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims.

■ Nonetheless, in his Report and Recommendation, Magistrate Judge Dougherty determined additionally that Plaintiff fails to present any evidence that the one episode occurring in 1993 occurred after September 26, 1993, within § 1981's statute of limitations. This conclusion assumes that the burden is on Plaintiff to show that his claims are not barred by the applicable statute of limitations. Generally, the burden is on the defendant to prove the existence of an affirmative defense. *See e.g., Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995); *Smith v. Duff and Phelps, Inc.,* 5 F.3d 488, 492 n. 9 (11th Cir. 1993); *Blue Cross and Blue Shield of Alabama v. Weitz,* 913 F.2d 1544, 1552 (11th Cir.1990). However, the Court is not required to address the issue whether the burden is on Plaintiff or Defendant to show whether Plaintiff's Title VII and § 1981 harassment claims are time-barred because there is no admissible evidence of any act occurring in 1993.

Plaintiff's sole evidence of the alleged statement in 1993 is Plaintiff's testimony that someone told him about the statement. Plaintiff has no personal knowledge that the statement was made and does not present the testimony of any witness who has personal knowledge that the statement was made. In sum, Plaintiff's sole evidence of this statement is based on inadmissible hearsay. *See* FED. R. EVID. 801, 802. Thus, Plaintiff has no admissible evidence of any act occurring at any point 1993. The admissible evidence in this case does not reveal the occurrence of any act beyond 1991 and does not permit any inference that any of the acts that comprise Plaintiff's hostile work environment claim occurred later than 1991 (which places all of the acts well outside both applicable statutes of limitations).

Therefore, even assuming *arguendo* the burden is on Defendant to show that Plaintiff's claims are time-barred, Defendant has sustained its burden to show Plaintiff's hostile work environment claims are barred by the statutes of limitations of both Title VII and § 1981. Further, the Court notes that even if there was admissible evidence of the statement allegedly made in 1993, Plaintiff's Title VII harassment claim still would be time-barred because the statement still would have been made more than 180 days prior to Plaintiff's filing his charge of discrimination with the EEOC in January 1995.

Thus, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claims under Title VII and § 1981.

### B. Alternatively, Plaintiff Fails To Present Sufficient Evidence To Create Jury Issues On His Hostile Work Environment Claims

Oddly, while Plaintiff failed to respond to Defendant's statute of limitations argument, Plaintiff objects to the Magistrate Judge's ruling in Defendant's favor on this issue. Plaintiff contends that the Magistrate Judge and Defendant erroneously assumed that Plaintiff's hostile work environment claims were based solely on the four episodes involving racial remarks or innuendo when, in fact, Plaintiff's hostile work environment claims also were based on alleged disparate treatment which allegedly went on until the day Plaintiff left the Ground Training Department in October 1994. Therefore, Plaintiff argues that both of his hostile work environment claims are within the applicable statutes of limitations.

As the Court discussed earlier, Plaintiff's failing to respond to Defendant's argument on this issue alone entitles Defendant to summary judgment. However, even assuming *arguendo* Plaintiff's claims were not barred by the applicable statutes of limitations and additionally assuming *arguendo* that Plaintiff's claims of disparate treatment also comprise a component of Plaintiff's hostile work environment claims, Defendant still is entitled to summary judgment because Plaintiff fails to present sufficient evidence to create jury issues on the questions (1) whether the conditions Plaintiff experienced were sufficiently hostile, and (2) whether Defendant should be held directly or indirectly liable for these conditions.

The Court does not recount the Magistrate Judge's analysis on these issues because after a careful *de novo* review, the Court finds that the Magistrate Judge's analysis is correct in all material respects and **ADOPTS** it as the **ORDER** of the Court regarding this issue. The Court adds only the following remarks in response to Plaintiff's Objections.

■ First, after a review of Plaintiff's Complaint and Mandatory Interrogatories, the parties' consolidated Scheduling Order, Plaintiff's deposition, and other relevant discovery, the Court finds that when Plaintiff brought this action, Plaintiff's claims of hostile work environment were distinct from Plaintiff's claims of disparate treatment. Plaintiff merged these claims together for the first time in response to Defendant's Motion for Summary Judgment, perhaps to bolster an otherwise weak hostile environment claim or perhaps to avoid the effects of the applicable statutes of limitations. Whatever the reason, Plaintiff cannot change its theory of the case (in an effort to avoid summary judgment) *after* Defendant moves for summary judgment. The Magistrate Judge was correct in not allowing Plaintiff suddenly to change directions in a way that ultimately would have resulted in prejudice to Defendant.

In an abundance of caution, however, this Court finds that even if Plaintiff is allowed to change his theory of the case at this late date, the result is the same. Assuming *arguendo* Plaintiff's allegations of disparate treatment are considered appropriately a part of Plaintiff's hostile work environment claim, these allegations (assuming they are true), even coupled with the episodes that the Magistrate Judge and Defendant cited, do not demonstrate an atmosphere so permeated with discriminatory insult, ridicule, and intimidation such that an objective person would find the conditions in Plaintiff's work place hostile or abusive. *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav.*

*Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995).[3.]

Further, Plaintiff fails to present sufficient evidence to create a jury issue whether Defendant knew or should have known about any hostile working conditions or that Defendant should be held indirectly or vicariously liable for any such working conditions. *See Faragher v. City of Boca Raton,* 111 F.3d 1530, 1535 (11th Cir.1997) (en banc). Plaintiff fails to present sufficient evidence that the conditions were so severe that Defendant should have known of their existence, *see Faragher,* 111 F.3d at 1538, and fails to present sufficient evidence that Defendant had any actual knowledge of any such conditions. *Kilgore v. Thompson & Brock Management, Inc.,* 93 F.3d 752, 753–54 (11th Cir.1996); *see also Reynolds v. CSX Transp., Inc.,* 115 F.3d 860, 867 (11th Cir.1997) (citing *Kilgore* for the proposition that a hostile work environment complaint to a manager not considered 'higher management' does not suffice as notice to company); *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988); *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982).

The only incidents Plaintiff reported were the statements by Shelly referring to Plaintiff as "black boy" and stating that if she wrote on Plaintiff with a black magic marker, she would not be able to see it. Defendant responded to Plaintiff's complaints about these statements and they did not occur again. *Compare Reynolds,* 115 F.3d at 868 ("Reynolds herself testified that after CSXT took action against Widney, he never again said anything to her or touched her inappropriately. A reasonable juror could not find ... that the acts taken by CSXT ... did not constitute prompt action 'reasonably likely to prevent the conduct from recurring.' "); *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 (11th Cir.1989) ("Of special importance, [the defendant's] harassment stopped after the remedial action."); *see also McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 481 (7th Cir.1996) ("[M]oreover, [the defendant's prompt remedial action] was completely effective."). Plaintiff admits that he did not complain to anyone (much less higher management) about any other conditions.

Finally, Plaintiff fails to present sufficient evidence to create a jury issue whether Defendant should be liable indirectly for any hostile work environment. While Plaintiff alleges that he suffered "harassment" at the hands of his supervisors, Plaintiff fails to present any evidence that his supervisors were acting within the scope of their authority or that they were aided in their harassment by their supervisory positions.[4] *See Faragher,* 111 F.3d at 1535.

---

**3.** While *Harris* and *Meritor* and several other cases in this Order establish the standards for establishing hostile work place environment claims in the context of sexual harassment, the Eleventh Circuit has adopted the same standards for hostile work environment claims in the context of racial harassment. *See Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995).

**4.** Plaintiff argues that harassment by supervisors is imputed to the employer and thus Plaintiff was not required to report any of his supervisors' statements or actions in order to hold Defendant liable on his hostile work environment claim. However, as the Eleventh Circuit recently reiterated in *Faragher v. City of Boca Raton,* 111 F.3d 1530 (11th Cir.1997), a supervisor's actions are imputed to the employer only where the supervisor either is acting within the scope of his employment or was aided in his harassment by authority given him by the employer. *Id.* at 1536; *see also Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558–60 (11th Cir.1987).

As a general matter, harassing activity is not within the scope of a supervisor's employment because the supervisor generally is attempting to achieve some personal end as opposed to some purpose authorized by the employer. *Id.,* 111 F.3d at 1536 ("[A]n agent is not acting within the scope of his employment when he is 'going on a frolic of his own'.... In this scenario, the agent steps outside of his employment ... to further some personal end...."). Further, a supervisor generally is not aided by the authority given him by the employer unless, for example, the supervisor held it over the plaintiff's head that the supervisor had authority to fire the plaintiff if the plaintiff did not do as the supervisor wished. *Id.* at 1537.

Here, Plaintiff fails to present any evidence that his supervisors acted within the scope of their authority in allegedly harassing Plaintiff or that his supervisors were aided by their authority in harassing Plaintiff. *See Faragher,* 111 F.3d at 1537 ("In one sense, a supervisor is always aided in accomplishing hostile environment ... by the

For all of the foregoing reasons and the reasons in Magistrate Judge Dougherty's Report and Recommendation, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claims. ·

### C. *Plaintiff's Disparate Treatment Claims*

As the Court discussed earlier, Plaintiff now claims that his allegations of disparate treatment should have been considered as part of his hostile work environment claims. Plaintiff does not address any disparate treatment claims in his Brief in Opposition to Defendant's Motion for Summary Judgment or in his Objections to Magistrate Judge Dougherty's Report and Recommendation. Thus, any separate claims for disparate treatment have been abandoned. See *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Love v. Deal*, 5 F.3d 1406, 1407 n. 1 (11th Cir.1993). Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's claims for disparate treatment.

### D. *Plaintiff Fails To Present Sufficient Evidence To Create Jury Issues On His Discriminatory Discharge Claim*

#### 1. *Prima Facie Case of Discrimination*

■ As the Magistrate Judge correctly noted, this case is appropriately considered a reduction in force case. Therefore, to make a *prima facie* case of discriminatory discharge based on circumstantial evidence, Plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for the position he held; (3) that he was removed from his position; and (4) other evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Mauter ·v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987).

In 1994, Defendant initiated a massive downsizing effort which resulted in a determination that three instructors would be transferred from Defendant's Ground Training Department. All the instructors in the Department were ranked and the three lowest ranked instructors were transferred. Plaintiff was one of the three lowest ranked instructors and was transferred to TransQuest, a new joint venture between Defendant and AT & T Corporation.[5] Plaintiff does not dispute that the decision to transfer Plaintiff was based on this ranking system and does not dispute that he was one of the lowest ranked instructors. Plaintiff also does not dispute that all three of the lower ranked instructors (who, in fact, received identical rankings), were all transferred. Rather, Plaintiff claims that he was ranked low because of his race.

■ For the reasons stated in Magistrate Judge Dougherty's Report and Recommendation, the Court finds that Plaintiff fails to present evidence sufficient establish a *prima facie* case of discrimination because Plaintiff fails to present sufficient evidence to meet his showing under the fourth prong of his *prima facie* case of discrimination. Plaintiff's evidence regarding the fourth prong is not evidence from which a reasonable jury could conclude that Plaintiff's race was a factor in Defendant's decision to transfer him.

Plaintiff fails to present any evidence that he was treated any differently than the two white instructors who received the same ranking as him and, critically, fails to present any evidence that he was better qualified than any of the instructors who Defendant retained. *See Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir.1996). Rather, Plaintiff merely attacks the objective factors on which Defendant relied in evaluating *all* of the instructors in the Ground Training Department and supplements these attacks with conclusory allega-

---

existence of an agency relationship with his employer. However, the common law rule does not use 'aided' is such a broad sense.").

**5.** Plaintiff's position with TransQuest was a higher paying position than Plaintiff's position in

Defendant's Ground Training Department. Thus, Plaintiff ironically contends that Defendant discriminated against him based on his race by transferring him to a higher paying position.

tions of racial discrimination. This is not sufficient. *See Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir.1989); *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference ... of discrimination...."); *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 951 (N.D.Ga.1995), *aff'd*, 87 F.3d 1331 (11th Cir. 1996) (stating that a plaintiff must show that he was removed from her position while less qualified employees were retained). Moreover, Plaintiff's contentions either are not supported by any evidence or, more importantly, do not show discrimination.

Plaintiff argues that one of the evaluators responsible for ranking all of the instructors, Tony Hite, had neither supervisory responsibility over Plaintiff nor access to information which would enable him to assess Plaintiff's performance. It is true that Hite never had supervisory authority over Plaintiff, but Defendant never contends that he did. Hite was selected as an evaluator because in his position as a Project Leader, he had access to and was required to install and maintain programs developed by all the instructors—including Plaintiff. In this sense, Plaintiff's contention that Hite did not have access to the instructors' work product is refuted by the evidence. (Hite dep. at 13–17; Lofton dep. at 95.) Hite admitted that he was more familiar with the work of some instructors than others, and that he was not in a position to view the day to day activities of all the programmers or view their performance in every conceivable aspect. The evidence shows without dispute, however, that Hite did have an opportunity to review the work of all the programmers and a basis for comparing the performances of all the instructors.

In any event, Plaintiff's challenge to Hite constitutes nothing more than a disagreement with Defendant's decision to select Hite as an evaluator. Plaintiff does not contend, however, and fails to present any evidence that Defendant's selection of Hite as an evaluator was based on any discriminatory animus. *Cf. Brown v. American Honda Motor Co. Inc.*, 939 F.2d 946, 951 (11th Cir.1991) ("A contract may be granted for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it is not for a discriminatory reason"); *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1501 (11th Cir.1985); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"); *see also McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990) (That the purpose of statutes like Title VII and § 1981 is "[n]ot to review bad business decisions, or question the soundness of an employer's judgment."). Plaintiff also does not contend and fails to present any evidence that Hite was influenced by discriminatory animus in his ranking of Plaintiff.

Plaintiff next argues that Defendant's evaluations were purely subjective and should be viewed with suspicion. This contention is not supported by any evidence. The evidence shows that Defendant's ranking system, while including some subjective evaluations, was based mostly on objective criteria. (Hite dep. at 16, 23–28; Lofton dep. at 138–60). In contending that Defendant relied on purely subjective criteria, Plaintiff seems to define "subjective criteria" as Hite's and Lofton's personal observations. Plaintiff stresses that both Hite and Lofton state that many of their evaluations were based on personal observations. However, subjective criteria and personal observations are not one in the same. Even objective evaluations inherently are based in large part on personal observations. For example, Lofton testifies that he personally observed when (and how often) individual instructors were (or were not) working at their work stations. Defendant emphasizes that whether an instructor is at his work station is not a subjective criterion.

Moreover, even assuming *arguendo* Defendants' evaluations were based partially on subjective criteria, this would not compel a finding of discrimination. Subjective criteria "is not in and of itself violative of [Title VII]." *See Allison v. Western Union Tel. Co.*, 680 F.2d 1318, 1322 (11th Cir.1982) ("It is

only when such criteria result in discriminatory impact that a violation occurs.").[6]

Thirdly, Plaintiff asserts that some of the evaluative comments accompanying his ranking were inconsistent with his evaluations for the previous three years. Plaintiff does not in any way describe how or in what respects his ranking is inconsistent with his evaluations for the previous three years and presents no documentary evidence of any inconsistencies. In fact, Plaintiff's only evidence of the existence of any inconsistencies is his affidavit testimony that an employee in Defendant's EEO office, Ron Davies, told Plaintiff that there were inconsistencies. Further, Plaintiff does not address whether (or how) other instructors' rankings were (or may have been) consistent or inconsistent with their previous evaluations.[7] In sum, Plaintiff fails to present any evidence that any alleged inconsistencies were based on his race. *Cf. Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir.1994) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.").

Finally, Plaintiff attempts to show that Defendant's ranking criteria shifted and were inconsistent. For example, Plaintiff noted that for one instructor, Jenny Ballard, "work habits," "supervisory work," and "willingness to take on additional duties" were emphasized; with other employees, "promotion of policies" was emphasized; and with another instructor, Nancy Bankston, Defendant's emphasis was on her "comprehensive computer knowledge." Plaintiff's argument in this regard is unpersuasive. It goes without saying that different persons' strengths and weakness may differ. That Defendant emphasized different individual strong or weak points among different individual instructors is not so much evidence of discrimination as it is a recognition that each of the instructors were not identical replicas of one another.

Essentially, Plaintiff's evidence boils down to no more than a disagreement with Defendant regarding his qualifications in relation to other instructors. However, as Magistrate Judge Dougherty correctly noted, this is insufficient to create a jury issue on the question of discrimination. *See Brown,* 939 F.2d at 951 ("[T]he court's responsibility was not to second guess the wisdom of Honda's reasoning, but to determine if the reasons given were a cover for discrimination."). It is not for this Court second guess the soundness of Defendant's employment decisions, but rather only to determine whether they were discriminatory. *Id.; Conner,* 761 F.2d at *1501; Nix,* 738 F.2d at 1187 ("That the employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"); *see also McDonald,* 898 F.2d at 1160 (That the purpose of statutes like Title VII and § 1981 is "[n]ot to review bad business decisions, or question the soundness of an employer's judgment."). For the foregoing reasons the Court finds that Plaintiff fails to establish a *prima facie* case of discrimination.

### 2. Pretext

■ Even assuming *arguendo* Plaintiff can make a *prima facie* showing of discrimination, Defendant still is entitled to summary judgment. Defendant produces evidence of a legitimate non-discriminatory reason for transferring Plaintiff—that is, that Plaintiff was one of the three lower ranked instructors in the Ground Training Department—and Plaintiff fails to present sufficient evidence to create a jury issue whether Defen-

---

**6.** Interestingly, Plaintiff also challenges one of the purely objective criteria on which Plaintiff's ranking was based—Plaintiff's ability, as compared to other instructors, to meet the estimated completion dates on the projects to which he was assigned.

**7.** In this regard, Defendant stresses that Plaintiff's performance in the Ground Training Department, as well as all the other instructors' performances, were satisfactory. This was re-

flected in all of the instructors' previous evaluations. However, the purpose of the rankings at issue here was not to examine any one instructor's performance in isolation—as was the purpose of the previous evaluations—but rather was to assess each instructor's relative strengths and weaknesses against the other instructors. Defendant emphasizes that the group as a whole was comprised of above average performers.

dant's legitimate non-discriminatory reason is a pretext for discrimination.

To show pretext, Plaintiff focuses on many of the same contentions on which he relied to show a *prima facie* case of discrimination. But in his Objections to Magistrate Judge Dougherty's Report and Recommendation, Plaintiff focuses on his contention that two of the instructors ranked higher than him had performance difficulties. Plaintiff states:

> Finally, a comparison of the treatment of Plaintiff with that of at least two other Programmers supports an inference of discrimination. Dennis Hadden, a white Programmer, was "ranked higher" than Plaintiff and retained although: He completed fewer new courseware projects than Plaintiff; completed fewer storyboards than Plaintiff; and, had to make more revisions than Plaintiff. In addition, Hadden was retained despite his tendency to leave work to go to waffle house and despite a prior supervisor's having "heard" that he did so.
>
> Similarly, Floyd Phillips, a white Programmer, was 'ranked higher' than Plaintiff and retained although: he was one of the slower programmers; he had little experience in "TEL"—a language for which proficiency was emphasized with other programmers; and his supervisor was aware that he had a rental business.[8]

(Pla. Obj. at 10.) Plaintiff's effort is unconvincing.

As Magistrate Judge Dougherty correctly noted, the evidence shows that Hadden's responsibilities were different than Plaintiff's. Hadden worked primarily with revisions to programs and not with original storyboards. Necessarily, Hadden completed fewer storyboards and courseware projects and had more revisions than Plaintiff. Plaintiff's contention that Hadden had any performance deficiencies is not supported by the record.

Regarding Phillips, Plaintiff contends that Phillips "was one of the slower programmers": and "had little experience in 'TEL'."

However, these were only two of the factors relevant to the ranking process. As important were work quality, leadership ability, interpersonal skills, and other factors. When all these factors are considered, as opposed to just a couple, Phillips received a higher ranking than Plaintiff. (Hite dep. at 21–28.)

In sum, while Plaintiff presents scattered pieces of circumstantial evidence, none of it, taken as a whole, undermines Defendants' non-discriminatory rationale. It is undisputed that Plaintiff was transferred because he was one of the lowest ranked instructors. However, Plaintiff fails to present any evidence (a) that those selected to evaluate the instructors were selected for discriminatory reasons; (b) that the evaluators who ranked all the instructors were motivated by any discriminatory animus; or (c) that the factors relied on by the evaluators were discriminatory. *See Isenbergh*, 97 F.3d at 444 ("[T]he plaintiff [must] point to facts which, if true, would present a basis for the disbelief of the defendant's *overall* justification.... [Plaintiff's evidence does] not ... provide a basis for contradicting [Defendant's] ultimate justification [that another] was more qualified."); *Brown*, 939 F.2d at 954 ("Although the plaintiff has produced scattered pieces of evidence of circumstantial evidence, none of it, even taken as a whole, raises sufficient questions to undermine [the defendant's] non-discriminatory rationale.").

█ At most, Plaintiff's evidence shows that he disagrees with Defendant's evaluation of his relative qualifications and that Plaintiff would have weighed the factors in the evaluation process differently. But again, Plaintiff's challenge to the wisdom of Defendant's business decisions is insufficient to show they were discriminatory and is insufficient to show pretext. *See Isenbergh*, 97 F.3d at 444 ("That the plaintiff calls into question some assertions made by the defendant is support of defendant's justification is not enough. The plaintiff must call into question the veracity of the defendant's ultimate justification

---

8. Plaintiff notes that Phillips had an outside business because Lofton commented that he felt that Plaintiff's extracurricular activities, including an alleged outside business, distracted Plaintiff from his work duties. Defendant does deny that it knew that Phillips had an outside business, but Plaintiff fails to present any evidence that Phillips's outside business distracted Phillips's attention from his work duties.

itself."). This is especially true here where Plaintiff's evidence consists of solely isolated occurrences of difficulties that Defendant may have had with other instructors from time to time as opposed to evidence reflective of the other instructors' overall performances. Plaintiff fails to present any evidence that he is even in a position to evaluate the overall performances of any of the other instructors, much less evidence that he was more qualified than any instructor who was retained.

Because Plaintiff fails to present any evidence that he was better qualified than any instructor who was retain—that is, that he should have been ranked higher—Plaintiff fails to show Defendant's reasons for transferring him were a pretext for discrimination. For the foregoing reasons and the reasons stated in Magistrate Judge Dougherty's Report and Recommendation, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's claim of discriminatory discharge.

### III. *CONCLUSION*

The Court **GRANTS** Defendant's Motion for Summary Judgment [27–1].

The Court directs the Clerk to enter final judgment in favor of Defendant on all of Plaintiff's claims.

### ATTACHMENT

### ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

#### July 2, 1997

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay,* 714 F.2d 1093 (11th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

SO ORDERED, this 2nd of July, 1997.

### *MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION*

DOUGHERTY, United States Magistrate Judge.

The above-styled case is presently before the court on defendant's Motion for Summary Judgment, filed December 10, 1996. Docket Entry [27]. Plaintiff filed his Response on January 14, 1997. Docket Entry [28]. Plaintiff filed a Motion to Strike Defendant's Motion for Summary Judgment on January 14, 1997. Docket Entry [29]. Plaintiff filed an Amended Brief in opposition of Defendant's Motion for Summary Judgment on January 22, 1997. Docket Entry [30]. Defendant subsequently filed both a Response in opposition of Plaintiff's Motion to Strike and a Reply in support of its original Motion for Summary Judgment on February 4, 1997. Docket Entries [32, 33], respectively.

#### *Plaintiff's Motion to Strike*

Plaintiff has moved to strike defendant's Motion for Summary Judgment on the grounds of untimeliness stating that such motion did not comply with the Discovery Order of August 2, 1996. The Court ordered that the discovery period was to be extended until thirty days after the Court ruled on plaintiff's motion to compel. The Court fur-

ther ordered that Defendant's Motion for Summary Judgment would be due thirty days after the close of the extended discovery period. Docket Entry [18]. A final ruling on Plaintiff's Motion to Compel was rendered by the Court in an Order filed on October 15, 1996. Accordingly, pursuant to the Order of August 2, discovery in the case closed on November 14, 1996. Thus, the Defendant's Motion for Summary Judgment was due on or before December 16, 1996. Therefore, the Defendant's Motion was timely as it was filed on December 10, 1996. Plaintiff's Motion to Strike is Denied.

### Defendant's Motion for Summary Judgment

Plaintiff brought suit under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*, alleging that defendants subjected him to racial discrimination. Plaintiff also brings a claim under 42 U.S.C. § 1981. Plaintiff contends that he was subjected to employment discrimination on the basis of his race in that he was subjected to derogatory language and innuendo; was treated differently than his all white coworkers in the Ground Training Section of the Programming Department; and was selected for job elimination because of his race.

### I. Statement of Facts

#### A. Background

In March of 1988, Defendant Delta Airlines hired plaintiff, an African–American male, as an Associate Programmer in Department 810, Delta's Information Technology Department. In March of 1989, plaintiff was promoted to Program Analyst. (undisputed).

At the beginning of 1990, plaintiff applied for and received a position in defendant's Program Development area in the Ground Training Department. This area was responsible for producing computer programs that were used to train employees such as pilots, flight attendants, and mechanics. As an instructor, plaintiff's primary job responsibility was to write computer programs. (Deposition of Plaintiff, hereinafter Plaintiff's Dep., pp. 53–58). During the first six months of his employ, plaintiff received no computer programming (or Tel) assignments, although he received a variety of other training related assignments during that time period. After plaintiff's first six months of employment, he received numerous Tel assignments. (Plaintiff's Dep., pp. 53–63).

#### B. Plaintiff's Racial Discrimination Claims

In December 1990, approximately six months after transferring to the Program Development Department, plaintiff called into work to advise that he would be late because his automobile had been vandalized during the night. (Plaintiff's Dep., p. 194). When plaintiff arrived at work that day, he was shown a parody of the "Twelve Days of Christmas" written by one of his co-workers which made reference to the vandalism of plaintiff's car. (Undisputed). The plaintiff stated that he was offended by the poem because of a reference to "malt liquor" which he perceived to be based on racial stereotyping. (Plaintiff's Dep., p. 201). The plaintiff did not report this incident to his employer. (Plaintiff's Dep., pps. 201–202).

Additionally, at some point in 1990 or 1991, a secretary in the department, Ms. Donna Shelley, called the plaintiff a "black boy" and once remarked that if she wrote on plaintiff with a black marker that it would not show up. The plaintiff reported these comments to Mr. Paul Nordan, Manager of Program Development. After the plaintiff reported the incident to Mr. Nordan, Ms. Shelley approached the plaintiff and apologized. (Plaintiff's Dep., p. 205). After this incident, Ms. Shelley never again used a racial remark toward the plaintiff. (Plaintiff's Dep., p. 207).[1]

Plaintiff also alleges an incident that occurred at some point in 1993 in which he received an indirect report of a statement made by Lamar Smith, a coworker, to the

---

1. It is plaintiff's testimony that, in fact, Ms. Shelley refused to speak with him at all after the complaint was made. (Plaintiff's Dep., p. 205).

effect that "if plaintiff entered a darkened room they could not see him." (Plaintiff's Response Brief, p. 4).

### Plaintiff's Removal

In the early 1990's, the entire airline industry was mired in a severe financial slump. Between 1991 and 1994, defendant lost two billion dollars. As a result, defendant instituted an aggressive cost-cutting program, titled "Delta's Leadership 7.5 Initiative", in which it sought to reduce costs in all areas of the company. (Undisputed). In 1994, as a result of this cost-cutting program, defendant reduced the number of employees in its Program Development area. Two individuals, Michael Lofton (Manager of Program Development) and Tony Hite (Project Leader of Program Development) were chosen to identify three instructors in the Program Development area who would be reassigned, transferred or laid off. (Deposition of Tony A. Hite, hereinafter Hite's Dep., pp. 7, 13–16; Deposition of Henry Michael Lofton, hereinafter Lofton's Dep., pp. 42–43, 57–59). In order to identify the three instructors who would be relieved of their current positions, Mr. Lofton and Mr. Hite together completed assessment forms on all of the instructors in the Program Development area. The assessment forms consisted of numerical rankings in three separate categories including qualifications, abilities, and productivity, as well as an overall ranking. (Lofton's Dep., pp. 42–43, 57–59 and Exhibits 1–18).

As a result of the rankings composed by Mr. Lofton and Mr. Hite, three individuals received a final overall ranking of six. These individuals were Mr. Robert Melo (a Caucasian), Mr. Joseph Campesi (a Caucasian), and plaintiff. Consequently, these three individuals were the lowest ranked instructors in the Program Development area, and each was ultimately chosen for a transfer. (Lofton's Dep., pp. 59, 102–04, 175–77 and Exhibits 1, 2, 14, 15).

Substantial parts of the Leadership 7.5 cost-cutting process, including the procedures used to rank employees and the rankings of individual employees themselves, were reviewed by Mr. Richard Ealey (Defendant's Director of Equal Opportunity) in order to ensure that the selection process was completed in a non-discriminatory manner. Mr. Ealey is an African–American male. (Undisputed).

The plaintiff was notified of his selection for transfer out of the Program Development area in a meeting with Mr. Larry Patrick (Defendant's System Manager of Program Development) and Mr. Lofton. At that meeting, plaintiff was offered the opportunity to return to his former department with the defendant or to bid on another job within the company. At that time, plaintiff was informed that if he returned to his former department, he would receive a job offer from TransQuest, a newly formed venture between defendant and AT & T which was to provide defendant with computer services. (Undisputed).

Within a few days of the meeting with Mr. Lofton and Mr. Patrick, the plaintiff received a telephone call from TransQuest informing him that he would be receiving a job offer from TransQuest in the very near future. Shortly thereafter, plaintiff received an offer letter from TransQuest which included an increase in salary. However, plaintiff does claim that he received a loss of tangible benefits including a reduced allotment of flight passes administered by Delta Airlines. Despite this, plaintiff accepted the offer and began working for TransQuest immediately. (Undisputed).

Plaintiff filed a discrimination charge with the EEOC on January 30, 1995. Additionally, plaintiff filed the present lawsuit on September 21, 1995. Accordingly, this is an action under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. Plaintiff contends that he was subjected to employment discrimination on the basis of his race, black, in that he was subjected to derogatory language and innuendo; was treated differently than his all white coworkers in the Ground Training Section of the Programming Department; and was selected for job elimination because of his race. Defendant Delta Air Lines maintains that the plaintiff's actions are time barred pursuant to the section 1981 two year statute of limitations as well as the 180 day procedural re-

porting requirement of a claim under Title VII. Alternatively, defendant maintains that the plaintiff has not met his burden of establishing an issue of material fact as to all of his claims.

## II.  Conclusions of Law

### A.  Summary Judgment Standard

At the summary judgment stage, the court must examine all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts in his favor. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir.1990). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

On a motion for summary judgment, "[t]he moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Once the movant has pointed out the nonexistence of any genuine issue of material fact, it is up to the plaintiff to produce some evidence in support of her claim. *Velten v. Lippert*, 985 F.2d 1515 (11th Cir.1993). Mere conclusory allegations of harassment are not enough to withstand a motion for summary judgment. *Carter v. Miami*, 870 F.2d 578, 585 (11th Cir.1989). In other words, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if unsupported by evidence or if created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Likewise, a fact is only material if designated by controlling

substantive law as an essential element of plaintiff's case. *Id.* at 248, 106 S.Ct. at 2510.

If neither party can prove the existence or nonexistence of an essential element of a claim, summary judgment will be granted if the movant shows that the plaintiff will be unable to meet her burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The movant's burden therefore requires a " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

### B.  Plaintiff's Claims are Time Barred

Defendant argues that plaintiff's claims of racial harassment under both Title VII and section 1981 are time barred and that summary judgment should be granted.

### 1.  Plaintiff's Title VII Claim

A Title VII plaintiff has 180 days from the date of the alleged discriminatory action in which to file a charge with the Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e–5(e). A timely filed EEOC charge is a prerequisite to bringing suit under Title VII. *Moore v. Alabama State Univ.*, 864 F.2d 103, 104 (11th Cir. 1989). It is not necessary for the plaintiff to present a *prima facie* case of discrimination based solely on events occurring within 180 days prior to the filing of the EEOC charge, however, if the plaintiff alleges a continuing violation of Title VII by his employer. In that instance, he must file his EEOC charge within 180 days from the last occurrence which forms the basis of the complaint. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992); *Nelson v. United States Steel Corp.*, 709 F.2d 675, 677 (11th Cir.1983).

In the present case, all incidents of racial discrimination alleged by plaintiff occurred between 1990 and 1993. Plaintiff stated that the parody of the "Twelve Days of Christmas" containing a racial reference was circulated around the office in December of 1990. (Plaintiff's Dep., p. 194). Additionally, plaintiff has alleged that racial remarks made by a secretary in his office occurred in the same

time frame. (Plaintiff's Dep., pp. 203–04). Finally, plaintiff asserted that the incident involving a report of a statement made by another coworker "[o]curred in 1993."[2] (Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 4). However, plaintiff did not file a discrimination charge with the EEOC until January 30, 1995. Thus, in order to bring a timely claim under Title VII, the relevant events must have occurred within 180 days of the date the plaintiff filed his Charge of Discrimination with the EEOC. Here, plaintiff made such a filing on January 30, 1995, well after the 180 day requirement imposed by Title VII.[3] Accordingly, the court finds that plaintiff's Title VII claim is time barred and Defendant's Motion for Summary Judgment should be granted as to this issue.

### 2. Plaintiff's § 1981 Claim

The United States Supreme Court, in *Goodman v. Lukens Steel,* 482 U.S. 656, 660–61, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (1987), recognized that there is no provision in 42 U.S.C. § 1981 for a statute of limitations. Analogizing to actions under § 1983, the Court determined that a federal court should apply the local statute unless it would be inconsistent with federal policy. *Id.* Civil rights actions are deemed the equivalent of actions for injuries to the person. Therefore, courts apply a two year limitation period. O.C.G.A. § 9–3–33 (1982); *Jones v. Bales,* 58 F.R.D. 453 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973). The period begins to run when the plaintiff knew or reasonably should have known that the discriminatory act had occurred. *Stafford v. Muscogee County Bd. of Educ.,* 688 F.2d 1383, 1390 (11th Cir.1982). The focus is on "the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (citing

*Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)) (emphasis in original).

Therefore, in order to state a valid claim under section 1981, the discriminatory events must have occurred within two years of the date plaintiff filed the complaint. In this case, plaintiff filed his complaint on September 26, 1995. Therefore, in order to make a proper claim under Section 1981 in this case, plaintiff must demonstrate that some discriminatory act occurred on or after September 26, 1993. Here, plaintiff has clearly not met this slight burden.

Plaintiff has filed two separate reply briefs to defendant's Briefs in Support of the Motion for Summary Judgment. Neither pleading raises any timeliness issue or *any* facts which tend to show that a discriminatory event happened within either the Title VII or section 1981 Actionable periods. Accordingly, under Local Court Rule 7.1 of the United States District Court for the Northern District of Georgia, factual and legal claims to which there is no response should be treated as unopposed.[4] Here, where there is neither a response to defendant's argument nor evidence suggesting that such events did fall within the relevant periods of limitation, the plaintiff is time barred for both the Title VII and section 1981 claims. The undersigned therefore recommends that both actions be barred and Defendant's Motion for Summary Judgment be granted as to all claims.

### C. Title VII and § 1981 Claims

#### 1. Racial Harassment

Even if the court finds that plaintiff's claims are not barred by the procedural time limits, Defendant's Motion for Summary Judgment should be granted because plaintiff has failed to make out his prima facie case of employment discrimination based on his race. A defendant is liable under Title VII if the employee has been discriminated

---

2. Plaintiff offers no specific evidence regarding this comment as to when it was made.

3. Plaintiff's EEOC charge states that the earliest incident of discrimination occurred on December 16, 1994. (Plaintiff's Dep., p. 181; Affidavit of Plaintiff, Exhibit 1).

4. New Local Rule 7.1 is the number representing former Rule 220–1. Rule change revisions are effective 4/15/97.

against on the basis of race or sex, and that discrimination has created a hostile or abusive working environment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).[5] In *Harris v. Forklift Sys.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court explained that the relevant inquiry looks at whether the actions of the defendants altered the working condition to such an extent that a reasonable person would find the atmosphere hostile and abusive and to such an extent that the plaintiff subjectively perceived the atmosphere as such. *Harris,* 510 U.S. at 21–23, 114 S.Ct. at 370–71, 126 L.Ed.2d at 302. The Court set forth factors which are to be examined in determining whether abuse in the workplace rose to this standard. The Court held that:

> These may include the *frequency* of the discriminatory conduct; its *severity;* whether it is *physically threatening or humiliating,* or a mere offensive utterance; and whether it *unreasonably interferes* with an employee's work performance.

*Id.* at 23, 114 S.Ct. at 371, 126 L.Ed.2d at 302–03 (emphasis added). The Court held that although the psychological effect on an employee may be considered, it is only one factor in the analysis, and that if the environment would reasonably be perceived as hostile and abusive, a showing of serious psychological harm is not necessary. *Id.* In other words, the court must examine the totality of the circumstances, looking at the combined effect of all of the incidents. *Id.; Edwards v. Wallace Community College,* 49 F.3d 1517, 1521–22 (11th Cir.1995); *Vance v. Southern Bell Tel. & Tel. Co.,* 863 F.2d 1503, 1510–11 (11th Cir.1989).

When the employee seeks to hold the employer liable for harassment by his supervisor, the employee must prove an additional element, specifically that the employer knew or should have known that the harassment was occurring, and that the employer failed to take prompt remedial action. *Hen-*

son v. Dundee,* 682 F.2d 897, 905 (11th Cir. 1982). The employee can prove that the employer knew by showing that he complained to higher management, or by a showing that the harassment was so pervasive that it "gives rise to the inference of knowledge or constructive knowledge." *Id.* Because the employer's liability in this instance is based on respondeat superior theories, an employer will not be liable if it took prompt remedial action. *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316–17 (11th Cir.), *reh'g denied,* 874 F.2d 821 (11th Cir. 1989).

Defendants argue that plaintiff cannot satisfy his *prima facie* burden because he does not establish any element of the *Harris* Test. Initially, defendant maintains that the conduct about which plaintiff complains does not rise to the sufficient level of pervasiveness to be actionable. In *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428 (7th Cir.1995), the Court stated that a few isolated instances of racial animus do not rise to the level of frequency to create a workplace permeated with racial hostility. In that case, the court held that seven racial incidents or remarks in seven months is not pervasive enough to rise to the level of harassment. Here, plaintiff complains of four incidents in a four year period. (Plaintiff's Dep., pp. 201–02). Plaintiff maintains that these instances, taken in the totality of the circumstances, are sufficient to create a pervasive, hostile working environment. (Plaintiff's Response Brief, p. 5). However, the court finds that these incidents were isolated occurrences consisting of merely offensive conduct. The incidents in this case occurred with the same infrequency as in *Baskerville.* Additionally, there was nothing about the character or severity of any particular instance, or all four taken as a whole, which would compensate for their infrequency. Accordingly, the court finds that the plaintiff has not established that defendant's conduct was sufficiently pervasive to meet the first element of the *Harris* test for a hostile working environment.

---

**5.** Plaintiff's claims under Title VII and section 1981 are based on the same facts, and the following analysis, therefore, will apply equally to these claims. *Howard v. B.P. Oil Co.,* 32 F.3d 520, 524

n. 2 (11th Cir.1994) (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)).

Defendant also maintains that the conduct complained of was not sufficiently severe in nature. Instead, defendant asserts that the specific instances of alleged harassment are at most merely offensive. Specifically, in reference to the parody of the "Twelve Days of Christmas," plaintiff complained of only one line in the document which he cited as including a general racial stereotype. Such general references, occurring infrequently and in isolated circumstances, do not rise to the level of hostility or severity as anticipated by the Supreme Court. *Harris*, 510 U.S. 17, 114 S.Ct. 367. However, plaintiff contends that, taken as a whole, the comments made by his coworkers, in addition to the stereotypical parody, meet the test of severity. Plaintiff points specifically to the comment made by a secretary in the office in which she called him "black boy". But, as stated in *Harris*, "the 'mere utterance of an epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* at 21, 114 S.Ct. at 370. Here, plaintiff has portrayed an environment in which he was subjected to several unrelated, racially motivated comments. While it is offensive for someone to refer to the plaintiff as "black boy" or make derogatory reference to the darkness of his skin in relation to the color of an ink pen, these comments do not rise to the level of severe conduct which is protected by Title VII or section 1981. Accordingly, the court finds that plaintiff has not met his burden to establish the severity of defendant's conduct.

As to the third element of the *Harris* Test, defendant asserts that it is also absent from plaintiff's argument. Defendant has stated that none of the incidents alleged by plaintiff were physically threatening or humiliating. In fact, plaintiff's testimony reflects that the conduct was at most only offensive. Accordingly, when the plaintiff reported the secretary's comments to his manager he stated only that "he did not enjoy it." (Plaintiff's Dep., p. 206). Moreover, plaintiff presents no evidence which tends to suggest that he was physically threatened or humiliated by any other comments from his co-

workers or from the parody of the Christmas poem which was circulated in the office. Defendant cites to a decision from the Seventh Circuit in which the court found that a Naval Instructor's isolated and off-color jokes made to a subordinate were insufficient as a matter of law to support a hostile work environment claim. *Rennie v. Dalton*, 3 F.3d 1100 (7th Cir.1993). The *Rennie* Court asserted that even though a statement or conversation may be considered to be offensive and in very poor taste, such may not be "[p]ersistent [enough to] poison the work environment." *Id.* at 1108. Similarly, in this case, the court finds that the work environment was not poisoned as to the plaintiff. The plaintiff refers the court to his affidavit as evidence of a hostile working environment. Nothing in the affidavit or cited in the brief suggests that the plaintiff was physically threatened or humiliated. Instead, plaintiff states only that "[t]here were several events in which certain types of treatment were directed at me because of my race, and these incidents had the effect of altering my work environment by making it uncomfortable in certain respects." (Plaintiff's Affidavit, ¶ 6). Such discomfort is not sufficient to meet the test of a physically threatening or humiliating act or environment. Accordingly, without asserting more, plaintiff does not establish that the defendant's conduct was humiliating or physically threatening in accordance with the requirements of the *Harris* Test for a hostile environment. Therefore, the undersigned finds that the plaintiff has failed to establish this element of his prima facie case for hostile environment racial discrimination.

As to the final element, defendant contends that none of the incidents about which plaintiff complains affected his ability to do his job in any way. Plaintiff maintains in his affidavit, however, that there were events in which certain actions were directed at him because of his race, and those incidents altered his work environment by making it uncomfortable in certain respects. (Affidavit of Plaintiff, 6). Part of plaintiff's argument however, asserts that he was wrongfully terminated evidenced by the fact that he believed he was an effective worker up until the point he was removed from the Program Development Department. That is, plaintiff

maintains throughout his deposition that his quality of work was equal to that of his contemporaries.

Defendant cites to a series of Title VII case law supporting the notion that even patently offensive jokes, slurs, and activities made on a sporadic basis do not create a hostile environment in the workplace. Specifically, defendant cites a case from the Seventh Circuit in which summary judgment was awarded to the defendant employer even though plaintiff's buttocks were slapped on one occasion, it was said to her face that she must "moan and groan" when having sex, she was asked by her trainer to give him a rubdown, and was asked in response to a request for help, "What will I get for it." *Scott v. Sears, Roebuck & Co.,* 798 F.2d 210, 215 (7th Cir.1986). Additionally, defendant cites *Ealey v. DeKalb County Hospital Auth.,* 59 Fair Empl. Prac. Cases (BNA) 1803, 1988 WL 384902 (N.D.Ga.1988), where the court found that the utterance of racial epithets by a co-employee does not demonstrate a hostile employment environment. Defendant also points to *Robertson v. Georgia Dept., of Corrections,* 725 F.Supp. 533 (S.D.Ga.1989), in which a black employee's allegations that he was moved to an inferior office, subjected to racially demeaning jokes, that specific supervisors called him "affirmative action boy" and "ole boy" were insufficient to make out a racial harassment claim. The *Robertson* case also noted that "[t]o recognize a cause of action based upon a discriminatory work environment, the court cautioned that the case should not be 'interpreted as. holding that an employer's mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee falls within the proscription of Title VII." *Id.* at 538 (quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971)). Plaintiff offers no caselaw in either of its reply briefs to diminish the strength and persuasiveness of defendant's argument as to plaintiff's hostile working environment claim. Additionally, there is no evidence presented by plaintiff to suggest a level of conduct which surpasses that of the defendant in *Scott* or *Robertson* which would establish a hostile environment. According-

ly, the plaintiff has failed to establish any element of his prima facie case for hostile environment employment discrimination. The court therefore finds that the plaintiff's case must fail as to the claim of the existence of a hostile working environment.

Defendant also maintains that the plaintiff has failed to establish his prima facie case of employment discrimination under Title VII and section 1981 .by omitting any facts tending to prove the existence of vicarious liability. According to the Eleventh Circuit, an employer may only be held vicariously liable in a hostile working environment claim upon a showing that the employer created or condoned such an environment. *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982). Here, the defendant maintains that the employer effectively dealt with any incident of racial harassment which was brought to its attention. Specifically, the defendant states that the plaintiff complained of only one instance of racial harassment to a superior. Accordingly, the plaintiff complained to his manager about Ms. Donna Shelley's reference to him as a "black boy". (Deposition of Plaintiff, p. 202–205). In this case, after the employer was put on notice of the racial epithet, Ms. Shelley apologized to the plaintiff and never again spoke a disparaging word about him. Additionally, although plaintiff asserts that the stereotypical parody of the "Twelve Days of Christmas" was written and disseminated by one of his supervisors, there is no evidence of this or that such occurrence was anything more than an isolated incident of merely offensive conduct by one of the plaintiff's coworkers. Conversely, in the present case, the facts suggest that the defendant responded promptly and effectively to the one and only identifiable remark of discrimination which was reported to the employer.

Defendant refers the court to several cases regarding the vicarious liability requirements of a hostile environment claim including *Jeffries v. Metro–Mark, Inc.,* 45 F.3d 258 (8th Cir.1995), which affirmed summary judgment for an employer on a racial harassment claim brought by a black employee who, despite several incidents of racial harassment, reported only two of the incidents to his em-

ployer who took necessary corrective action. Additionally, defendant cites *Dennis v. County of Fairfax,* 55 F.3d 151 (4th Cir.1995), articulating that vicarious liability is barred if the defendant employer implements timely and adequate corrective measures after the harassing conduct is brought to the employer's attention.

As to defendant's argument denying the existence of vicarious liability, the plaintiff offers no caselaw or even an argument establishing the existence of liability on the part of the defendant. Instead, the plaintiff relies on his affidavit which merely makes general, conclusory statements as to the existence of liability' on the defendant employer. In light of the facts of this case, coupled with the argument of defendant, the court finds such assertions insufficient. Accordingly, the undersigned finds that plaintiff has failed to adequately demonstrate the existence of vicarious liability on the part of this defendant.

### 3. Plaintiff's Disparate Treatment Claim

A plaintiff under Title VII may show discriminatory intent by either direct or indirect evidence. Actions or remarks of an employer which reflect a discriminatory attitude would be direct evidence of discriminatory intent. *Wall v. Trust Co. of Georgia,* 946 F.2d 805, 809–10 (11th Cir.1991); *Hill v. Metropolitan Atlanta Rapid Trans. Auth.,* 841 F.2d 1533, 1539 (11th Cir.), *modified,* 848 F.2d 1522 (11th Cir.1988); *Bell v. Birmingham Linen Serv.,* 715 F.2d 1552, 1556 (11th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984).

When a plaintiff attempts to prove discriminatory intent by indirect evidence, the court applies the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817. A *prima facie* case of discrimination may be shown in many ways, depending on the facts of the individual case.

*McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Jones v. Gerwens,* 874 F.2d 1534 (11th Cir.1989). Plaintiff may present a *prima facie* case of disparate treatment by showing that he belongs to a protected class and that he was treated differently from similarly situated persons who were not in his class.

If plaintiff meets the burden of presenting a *prima facie* case, a presumption of discriminatory intent arises. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory action. The defendant's burden is merely one of production, not of proof. *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). Finally, if the defendant carries this burden, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the reasons offered by the defendant were actually a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25. The burden of persuasion never shifts but remains with plaintiff at all times. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *Hill,* 841 F.2d at 1538.

To establish a *prima facie* case of disparate treatment, plaintiff must show that he is a member of a protected class; that he was qualified for the position in question; that he suffered an adverse employment action; and that the adverse action was causally related to his status as a member of the protected class. Plaintiff has the burden of showing that those outside his protected class engaged in "nearly identical" conduct. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.) (quoting *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir.1982)), *reh'g denied,* 747 F.2d 710 (11th Cir.1984). Although this last element varies depending on the factual situation, where the facts involve a reduction in force situation, as the case here, both plaintiff and defendant point out that the fourth prong of the *McDonnell Douglas* Test is altered. As stated by the Eleventh Circuit

in *Mauter v, Hardy Corp.*, 825 F.2d 1554 (11th Cir.1987):

> In situations involving a reduction in force, however, the employer seldom seeks a replacement for the discharged employee. Accordingly, the fourth prong of the prima facie case is altered to require that the plaintiff "produce evidence circumstantial or direct, from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."

825 F.2d at 1557 (quoting *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981)).

Defendant asserts that the plaintiff cannot satisfy the final prong of the modified disparate treatment test because he cannot produce any probative evidence to establish that the defendant intended to discriminate on the basis of the plaintiff's race. Instead, defendant points to several non-discriminatory factors which were the impetus behind plaintiff's transfer. Primarily, defendant has established that during 1994, it was engaged in a concerted effort to restructure the entire airline in order to reduce expenses and streamline its workforce. Defendant asserts that the decision to restructure the Program Development area, and consequently to transfer the plaintiff, were a small part of many steps taken to accomplish that goal.

Plaintiff correctly asserts that the testimony of the defense witnesses shows that the defendant decided to eliminate three positions from among the group of instructor/developers who worked primarily in the pilot development area and then decided which people to eliminate. However, plaintiff makes an inaccurate assessment that the evidence of record supports an inference that plaintiff was included among the people to be eliminated because of his race. Conversely, plaintiff was transferred along with two other white males, Mr. Melo and Mr. Campesi, because these were the three individuals with the lowest performance rankings in the department. Here, defendant has shown that the plaintiff was treated in the same manner as the other two low ranked white individuals. Accordingly, each individual was given a similar transfer arrangement based on the rankings compiled by their supervisors.

Defendant cites *Durham v. Xerox Corp.*, 18 F.3d 836, 839–40 (10th Cir.1994), *cert. denied*, 513 U.S. 819, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994), which involved a similarly situated employee who was terminated based on the subjective rankings of her employer. In that case, the court stated that the plaintiff's disagreement with a subjective evaluation does not prove discriminatory intent. *Id.* at 840.

In response, plaintiff cites *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir.1984), as supportive of his contention of disparate treatment. The court in *Carmichael* recognized as potentially discriminatory those purely subjective decisions which were made by all white decisionmakers. Plaintiff relies on this rationale asserting that an all white review committee used purely subjective standards in order to transfer the plaintiff based on his race in this case. However, the defendant has demonstrated that this is not accurate. In fact, defendant has shown that the entirety of Delta's Leadership 7.5 initiative, including the decisions to transfer employees, was overseen and *reviewed* by defendant's Director of Equal Opportunity, Mr. Richard Ealey who is also an African–American. Accordingly, it is extremely difficult for a plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466 (11th Cir.1991). Here, plaintiff has not met that burden. The Court finds that the plaintiff has failed to establish his prima facie case demonstrating the existence of disparate treatment on the part of the defendant.

### 4. Defendant's Non–Discriminatory Justifications

Defendant has demonstrated the non-discriminatory reasons for plaintiff's removal from the department. Initially, the defendant has demonstrated the primary non-discriminatory justification for the removal of workers by showing evidence of a large scale corporate restructuring. In fact,

it is undisputed that the defendant's "Leadership 7.5 Initiative" resulted in the termination and transfer of many employees. Thus, as to the general need to remove several members of plaintiff's department, the defendant has established a non-discriminatory motive. Additionally, defendant has provided evidence establishing the justifications for plaintiff's removal from his department. Defendant, asserts that while the plaintiff's performance received an overall rating of "satisfactory", plaintiff was being assessed with a group of above-average performers. Additionally, Mr. Hite, who reviewed the work of all of the programmers on a regular basis, concluded from his observations that Defendant's output was both quantitatively and qualitatively below that of his coworkers. Accordingly, the defendant points out that plaintiff recognized in his deposition his failure to meet estimated completion dates. (Deposition of plaintiff, p. 187). Defendant's justifications are based on performance rankings conducted and reviewed by three different people employed by the defendant. Also, defendant has established that, in comparison to his co-workers, plaintiff's work was sub-par. Accordingly, in this case, defendant has established a non-discriminatory motive both to reduce its workforce generally, as well as specifically to the plaintiff.

### 5. Plaintiff's Claim of Pretext

Plaintiff asserts that defendant's pretextual decision to transfer the plaintiff can be specifically illustrated in three instances. First, plaintiff maintains that defendant's allegation that plaintiff was engaged in outside business which was interfering with his employment was an inaccurate, pretextual accusation. Plaintiff maintains that it would have been difficult for his supervisor, Mr. Lofton to determine this based on only two isolated incidents of non-work related phone calls. Secondly, plaintiff asserts that the evaluative comment that plaintiff did not take criticism well was also pretextual. Finally, plaintiff claims pretext in terms of his job productivity. This argument is primarily demonstrated by stating only that two other employees, Dennis Hayden and Floyd Phillips, were also unproductive, without any supporting evidence or specific instances of deficiency.

Essentially, plaintiff's claim of pretext is derived from the fact that he personally disagrees with the assessment of his superiors as to the quality of his work and his value as an employee. However, this disagreement is insufficient in terms of establishing a race related termination or a pretext for such a dismissal. Instead, defendant points to several courts which have stated that solely because a plaintiff employee believes assessments are misdirected does not create a genuine issue of material fact concerning whether such employee was discriminated against on the basis of race. According to *Young v. General Foods Corp.*, 840 F.2d 825 (11th Cir.1988), a disagreement on the quality of performance is not sufficient to establish racial discrimination. That court stated:

> Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions. Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer.

840 F.2d at 828 (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590 (11th Cir.1987)).

In this case, plaintiff has only attacked the review process based on his own opinion and assessment of how he thought other employees were performing. In his affidavit, plaintiff states that he observed other employees who had "[s]ufficient time to walk around not engaged in work" as evidence that other coworkers were less productive than himself. (Affidavit of plaintiff, ¶ 13). Plaintiff also asserts that the rankings of the plaintiff and his coworkers were based upon subjective factors that were easy to manipulate in order to justify whatever selections the decisionmakers made. Additionally, plaintiff states that the two primary individuals responsible for the evaluations were not adequate because the factors which they relied upon were insufficient. However, it is not

the job of this court to criticize the business decisions of any defendant. Here, the defendant has affirmatively established a non-discriminatory reason for the changes made within the plaintiff's department. Upon the defendant's showing of a legitimate, non-discriminatory purpose for the removal of the plaintiff, it is the burden of the plaintiff to demonstrate that the proffered reason is a mere pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In the present case, the plaintiff has not met that burden. Instead, the plaintiff has only made conclusory allegations of racial discrimination on the part of his supervisors in connection with his removal from the Program Development Department of the Defendant. The court finds that the plaintiff has not met his burden of demonstrating that defendant's reasons for transferring the plaintiff were pretextual rather than a result of a legitimate business need. Accordingly, the undersigned finds that Defendant's Motion for Summary Judgment should be granted as to plaintiff's claims of racial discrimination under both Title VII and section 1981.

### Conclusion

Plaintiff's Motion to Strike is DENIED. The undersigned RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED.

IT IS SO ORDERED AND REPORTED AND RECOMMENDED, this 2nd day of July 1997.